OSBORNE *v.* READING CENTRAL TELEPHONE CO.

TELEGRAPHS AND TELEPHONES — DUTY TO RENDER SERVICE — STATUTES.

   Plaintiff was a stockholder of a local telephone company which had a contract with defendant to render to its subscribers telephone service with independent telephone systems in the county. Plaintiff's brother was a member of an unincorporated independent association, in the same county, which had entered into a contract with defendant to connect its lines with the switch board of defendant. Under the agreement the independent association contracted to pay all transfer charges and messenger fees incurred by its members, and an annual fee, to the defendant; amounts so incurred to be a charge upon the individual member of the association who incurred the charge. Although defendant's contract with plaintiff's company provided that service might be refused to delinquent subscribers, no such provision appeared in the contract with the independent association. Defendant, on numerous occasions, refused plaintiff connections with the telephone of his brother, a member of the voluntary association, alleging as a reason for its refusal, that the brother was in arrears for certain charges. Plaintiff brought assumpsit to recover the penalties imposed under 2 Comp. Laws, § 5270, for refusing to render the service. *Held,* that, under the contract of the voluntary association, of which the delinquent was a member, the association was primarily liable for the fees, and defendant was bound to furnish connection with his telephone at plaintiff's request.

Error to Hillsdale; Chester, J.  Submitted October 24, 1910.  (Docket No. 6.)  Decided December 7, 1910.

Assumpsit by Byron S. Osborne and the people of the State of Michigan against the Reading Central Telephone Company to recover a statutory penalty. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

163 MICH.—35.

*Paul W. Chase,* Prosecuting Attorney, and *Spencer D. Bishopp* (*F. A. Lyon,* of counsel), for appellants.

*Frankhauser & Cornell,* for appellee.

STONE, J.   An action of assumpsit was brought in the circuit court for the county of Hillsdale to recover the statutory penalty provided by section 5270, 2 Comp. Laws, being Act No. 72 of the Public Acts of 1883, entitled "An act relating to telephone companies, and to regulate the use and rental of telephones in this State." Said statute, so far as applicable to this case, reads as follows:

"It shall be the duty of every telephone company, or person, firm, or corporation, engaged in the business of leasing telephones to the public, or supplying the public with telephones and telephonic service, or operating a telephone exchange, to receive and transmit without discrimination messages from and for any other company, person or persons, upon payment or tender of the usual or customary charges therefor, and upon payment or tender of the usual or customary charges, or usual or customary rental sum * * * to furnish without unreasonable delay; without discrimination, and without any further or additional charge * * * a telephone or telephones, with all the proper or necessary wires and fixtures, and the use of such telephones, wires and fixtures, as well as connection with the central office or telephone exchange, if desired, and shall connect the telephone of such person, firm, or corporation with the telephone of any other person, firm, or corporation having connection with the same, or a connecting exchange or central office, whenever requested so to do. * * * Every company, person, firm, or corporation neglecting or refusing to comply with any of the provisions of this act, shall forfeit all right to transact a telephone business in this State, and may be enjoined therefrom, and from leasing telephones to the public, from supplying the public telephones and telephonic service, and from operating a telephone exchange * * * by any person, firm, or corporation injured, interested or denied any of the rights herein given, or * * * shall forfeit not less than twenty-five dollars, nor more than one hundred dollars, for each and every day such neglect or refusal shall continue, one-half to the person * * * prosecuting therefor."

It appeared upon the trial that the defendant was organized January 19, 1904, under Act No. 129 of the Public Acts of 1883, entitled "An act for the organization of telephone and messenger service companies," being chapter 177 of the Compiled Laws, and acts amendatory thereto. Acts Nos. 16, 93, Pub. Acts 1899. Its principal office is located in the village of Reading, in said county, where it has, in connection with its other business and equipment, a switchboard, which is used not only for its business, but as well for other companies having contract relations with it, as will hereafter appear. The Reading Telephone Company, of which the plaintiff, Byron S. Osborne, is a stockholder and subscriber, is also a corporation organized under the same act as the defendant, and was incorporated on April 18, 1903, and was reorganized and reincorporated on April 12, 1904. The Central Cambria Telephone Company is a voluntary, unincorporated association composed of 12 or more members, including one Wellington D. Osborne.

On June 1, 1905, the Reading Telephone Company entered into a written contract with the defendant. The object of said contract was therein stated as follows:

" The object of this contract is to encourage and build up a united, permanent telephone system in the vicinity of Reading, Mich., and to encourage free, independent exchange service through the county of Hillsdale among subscribers to independent systems; to the end that each party hereto may be protected and encouraged to build in its respective fields, without fear of encroachment, and each be protected from its absorption by antagonistic companies; and this object shall be maintained in letter and spirit, and a breach hereof shall constitute a forfeiture of all rights hereunder."

It was provided in said contract that the defendant was to do the switching for the said Reading Telephone company, at its switchboard in the village of Reading. The ninth clause of said contract was as follows:

" First party (the Reading Telephone Company) agrees to pay second party (the defendant) in consideration of

the agreements of second party, and the services herein set forth to be performed, a switch fee of three ($3.00) dollars per annum for each telephone connected with first party's lines, payable quarterly in advance. First party also agrees to pay second party as they occur all messenger fees, and also transfer charges and tolls, and other charges incurred on account of any subscriber to first party; such charges and the switchboard fee above specified to be a charge against the individual subscriber of first party in whose interest they occur. All charges to be payable at the company's office in the village of Reading. In case any subscriber shall refuse, or for the space of fifteen days neglect to pay to second party when due charges or fees as above, second party may, at its option, refuse further service until all arrearages are paid, and such subscribers shall not be entitled to any rebate on account of service having been denied pending payment."

Under and by virtue of the said contract the defendant had done the switching for the Reading Telephone Company from the date of the contract to the time of the trial of the case. In January, 1904, said voluntary association, known as the Central Cambria Telephone Company, entered into a contract with the defendant for the construction of rural lines by said Central Cambria Telephone Company, and the connection of its lines with the switchboard of the defendant in the village of Reading. This contract provided, among other things, that the Central Cambria Telephone Company was to have the right to string a line of wire on the trunk line poles of the defendant, which extend from the village of Reading to the city of Hillsdale; this privilege to extend to three miles of such line, namely, from the Petrie schoolhouse in Cambria, so called, to the corners below Burch's residence, near Reading, upon certain conditions relating to the setting of poles. Said contract contained the following language:

"First party (the defendant) to do the cross-arming and assist in bracing the line, and to give second party (Central Cambria Telephone Company) free use of its exchange in the village of Reading, and of its trunk line from Reading to Hillsdale, also such other free privileges as are accorded other lines connected with its switchboard

in the village of Reading, upon the payment of a switchboard charge of $3.00 per annum for each telephone on second party's lines; said $3.00 per annum to be paid quarterly on or before the middle of each quarter.  It is further agreed by second party that no telephone shall be attached to its line except such instruments as are approved by first party.  First party also agrees, in consideration of the agreements of second party, and of the payments herein specified, to keep the poles and lines in repair, including line of second party on said trunk line poles, free of charge to second party for a period of ten years, during which time second party's line is to be connected with first party's switchboard in the village of Reading; first party meeting the wires of second party at the corner one mile east of the center of the village of Reading.  It being understood that no telephones shall be attached to second party's line, not approved by it, and no telephones shall be attached to second party's line within the village of Reading, except through first party's switchboard. Second party agrees to pay first party, as they occur, all transfer charges and messenger fees incurred on account of any member of second party.  Such charges and switchboard fee of $3.00 per annum above specified to be a charge upon the individual member of the second party in whose interest they occur."

Business had been carried on under this contract down to the time of the trial.

It appeared that Wellington D. Osborne, one of the members of the Central Cambria Telephone Company, is a brother of the plaintiff, Byron S. Osborne, and lived about two miles from the residence of said plaintiff, and on the line of said Central Cambria Telephone Company. During the time complained of in the pleadings, it became necessary for said plaintiff to use the telephone in communicating with his brother, Wellington D. Osborne, on account of sickness in the latter's family.  On July 29, 1907, and on several subsequent occasions, said plaintiff attempted to get telephone communication with Wellington D. through the switchboard of the defendant, in the village of Reading, and was by defendant refused.  The reason given was that Wellington D. had not paid his

switch fees. This, however, was denied by said plaintiff, as he claimed he had paid said fees for his brother, Wellington D., and that no more switch fees were due until August 15, 1907. This claim the court found to be true. Upon the trial, however, it appeared, for the first time, that there was a small amount of toll service unpaid for long distance service rendered to Wellington D. It also appeared that, during the time the defendant was refusing to give said plaintiff connection with the telephone of Wellington D., at least three other persons were permitted, by defendant, to telephone to said Wellington D. through the switchboard of the defendant, and it was the claim of the plaintiffs that this conduct of the defendant amounted to a discrimination within the meaning of the statute. Upon the trial the following general rule of defendant was received in evidence, under the heading "Long Distance or Trunk Line Service:"

"Toll line service will be charged to the subscriber from whose instrument the toll message is sent. If not willing to guarantee charges, do not allow others to use your 'phone."

It appeared that Wellington D. Osborne had seen a copy of said rule. At the close of the testimony, the counsel for defendant moved for the direction of a verdict for the defendant upon the ground that at the time the defendant shut off the said plaintiff from talking with his brother, Wellington D., the latter owed the defendant for toll service. This motion was granted. In directing the jury to find a verdict for the defendant, the court found that Wellington D. was not in default in his payment of the switch fees at the time of the refusal to said Byron S. Osborne; but the court based its ruling solely upon the ground that at that time there was a small amount of long distance service that was unpaid, and which Wellington D. owed defendant. The plaintiffs have brought error, and the only questions urged are whether the court erred in directing a verdict and judg-

ment for the defendant, and in not submitting the case to the jury.

Counsel agree that there is really but one question to be considered, and that is whether the nonpayment of the small amount due defendant for long distance service justified it in refusing to give Byron S. Osborne connection with the telephone of Wellington D. Osborne.

It should be borne in mind that the plaintiff, Byron S. Osborne, was in no wise in default; and this brings us to note the difference between the two contracts. The contract with the Reading Telephone Company, of which Byron S. Osborne was a stockholder and subscriber, contained an express provision that in case any subscriber should refuse, or for the space of 15 days should neglect, to pay the defendant, when due, charges or fees, the defendant might at its option refuse further service. There is no such provision, either in form or substance, in the contract with the Central Cambria Telephone Company, of which Wellington D. Osborne was a member. He and the other associates are not even called "subscribers," but "members." They were members of the voluntary association. In our opinion this difference was not a mere accident. The relation between the association and defendant was created by the special contract above set forth, and we do not think that the general rules of the defendant applied either to such association or to its members.

In the contract between the association and the defendant it was expressly provided that:

"Second party (the Central Cambria Telephone Company) agrees to pay first party (defendant), as they occur, all transfer charges and messenger fees incurred on account of any member of second party."

In our opinion, the primary obligation to pay is on the Central Cambria Telephone Company, and not upon its members, and the defendant should, under the terms of the contract, look to the association for its pay; and it cannot invoke its general rules, applicable to subscribers,

in this case. If it could do so, it would have an equal right to shut off every member of the association, for the debt, default, or obligation of the Central Cambria Telephone Company.

The debt or default here complained of was, under the contract, primarily the debt or default of such association, and not of its members. True, it might in the end be charged by the association to the individual member thereof; but this did not change the right or duty of the defendant.

We are of opinion, therefore, that the circuit court erred in directing a verdict for the defendant. Upon the retrial of this case it may become a question for the jury whether there was a deliberate and wilful violation of the statute on the part of the defendant. For the error pointed out, the judgment of the court below is reversed, and a new trial granted.

BIRD, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.